**STACY et al.  v.  WAGERS.**

Court of Appeals of Kentucky.

Dec. 11, 1953.

Rehearing Denied Feb. 26, 1954.

W. R. Lay, Grant F. Knuckles, Pineville, for appellants Kathleen H. Stacy and William Dixon.

Cleon K. Calvert, Pineville, for appellant Jean Valentine.

J. B. Johnson, J. Leonard Davis, Harlan, for appellee.

CAMMACK, Justice.

Judge William Dixon, and Kathleen H. Stacy and Jean Valentine are appealing from a judgment rendered by Special Judge Astor Hogg in the Bell Circuit Court, holding Ada Wagers to be the duly appointed official stenographic reporter for the 41st

Judicial District. Judge Dixon and Kathleen Stacy insist that Kathleen Stacy is the duly appointed reporter for the 41st Judicial District. Jean Valentine insists that she is the duly appointed reporter for that District. We are of the opinion that the judgment in favor of Ada Wagers is correct.

Judge Hogg prepared an able opinion in the case which sets forth the facts and law involved. Since we concur in his views, and the conclusions reached by him, we quote and adopt his opinion, with a few modifications. The opinion follows:

"The Court is faced with the task of determining which of three young women, each of whom is skilled in her profession, is the legal official court reporter for the 41st Judicial District of Kentucky. This determination is to be made upon admitted facts.

### "The Facts

"The Honorable William Dixon is the Circuit Judge of the 41st Judicial District composed of Bell and Leslie Counties. He took office, after election, on the first Monday in January, 1952.

"On January 9, 1952, he entered an order (in vacation) in the Leslie Circuit Court, which order is found in Commonwealth Order Book No. 22, page 6, wherein and whereby he at least undertook to appoint one of the parties to this litigation, Jean Valentine, 'Official Court Reporter for the Leslie Circuit Court.' Said order is in words and figures as follows:

" 'It is ordered by the court that Jean Valentine be and she is hereby appointed official court reporter for Leslie Circuit Court, and she having taken oath to faithfully and to the best of her ability discharge her duties as said Official Court Reporter or stenographer, may immediately enter upon the discharge of her duties as Official Stenographic Reporter for the Leslie Circuit Court.'

:"On the first day of the January Term (January 14, 1952) of the Bell Circuit Court, as appears in Order Book 29, page 15, in the Clerk's office of that Court, Judge Dixon entered an order appointing Miss Wagers, another party to this action, Official Court Reporter, and that order is in words and figures as follows:

" 'On today, Miss Ada Wagers at the will and pleasure of the court was appointed Official Court Reporter for a term of four years from date, and was present and accepted said appointment and was sworn as required by law, taking the official and constitutional oath.'

"Miss Wagers had, on November 10, 1951, filed her formal application with Judge Dixon for the office of 'Court Reporter of the 41st Judicial District of Kentucky, composed of Bell and Leslie Counties.'

"On August 7, 1953, an order, as appears of record in Order Book 29, page 348, was entered by Judge Dixon in the Bell Circuit Court undertaking to appoint the third claimant to the office, Miss Kathleen H. Stacy, Official Court Reporter for the 41st Judicial District, and which order is in words and figures as follows:

" 'It is ordered by the court that Miss Kathleen H. Stacy be and she is hereby appointed Official Court Reporter for the 41st Judicial District composed of Bell and Leslie Counties, for and during the pleasure of the court.

" 'And she having been eminently qualified to discharge her duties under said appointment and being present and having been sworn in to faithfully and well discharge her duties as Court Reporter, as provided by law, and she may enter immediately upon the performance of the duties under said appointment.'

"Since January 9, 1952, Miss Valentine has at all times served as Official Court Reporter in the Leslie Circuit Court, without objection from anyone. She confined her work to the Leslie Circuit Court.

"Since January 14, 1952, and up until August 7, 1953, when Judge Dixon entered

his last order undertaking to appoint Miss Stacy, Miss Wagers at all times acted as the Official Court Reporter for the Bell Circuit Court. Immediately after her appointment in the first place she secured an apartment in Pineville where she had lived. Miss Wagers has confined her official activities to the Bell Circuit Court, and has never done any reporting in the Leslie Circuit Court. She testified that soon after her appointment at Pineville, she inquired of the Judge when he desired her to appear in Leslie to do the reporting but was informed by the Judge that he had appointed another girl to report in that county. While she testified she was ready and willing at all times to carry out her job in the Leslie Circuit Court, nevertheless she failed to do anything about it and took no steps to 'capture' that work in Leslie County or to perform the duties of Court Reporter in the Leslie Circuit Court.

"Since the appointment of Miss Stacy in August of this year, she has acted as the Official Court Reporter in the Bell Circuit Court.

"Each of these three claimants contends that she is the legal Official Court Reporter for the 41st Judicial District of Kentucky. There is no question about each of them being skilled in the profession and each is qualified to hold the office. Miss Wagers, through her counsel, mildly suggests that when Miss Valentine was appointed she had not reached the age of twenty-one years, and for that reason the appointment was void. However, there is no merit in this suggestion.

## "The Law

"KRS 28.410 clearly provides that each Circuit Judge may appoint an official stenographic reporter for his court or division, except that if his district embraces more than one county, none of which contains a city of the second class, he shall appoint one official stenographic reporter for the district. The statute further provides that the reporter shall hold office for a period of four years, or until his successor is appointed and qualified unless sooner removed as provided by KRS 28.490.

"No claim is made that either Miss Wagers or Miss Valentine are or were removable under KRS 28.490.

"Clearly KRS 28.410 makes Official Court Reporters officers for a fixed term of four years. Love v. Duncan, Ky., 256 S.W. 2d 498.

"Counsel for Miss Valentine insists that although the order of the Judge entered in the Leslie Circuit Court provided that she should be the reporter for the Leslie Circuit Court, and failed to make the appointment for any period of time, nevertheless KRS 28.410 became a part of said order and its provisions are controlling of the terms of said order. He says that the order should be read and construed to be an appointment for the entire district for the four year term. A ringing phrase used by counsel in argument of this case was that equity presumes that was done which should have been done. Cited is the case of Kentucky Utilities Co. v. Public Service Commission, Ky., 252 S.W.2d 885, in an attempt to sustain his position. Other cases of like import are cited. The Kentucky Utilities case simply reaffirmed the law that the law in force when and where a contract is made forms a part of the contract, and that parties are presumed to contract with reference to existing law. Just in what way those principles are controlling or are applicable to the point in this case is hard for this Court to see.

"Is there any statutory authority for the appointment of a Court Reporter for the Leslie Circuit Court? None can be found. The only authority for the appointment of a Court Reporter is found in KRS 28.410, and in this instance we find authority to appoint a Court Reporter for Judge Dixon's Judicial District composed of Bell and Leslie Counties. In no way can the court read into this Leslie order an appointment of Miss Valentine for the 41st Judicial District of Kentucky. There isn't any office of Official Court Reporter for the Leslie Circuit Court. The Official Court Reporter of the 41st Judicial District is obliged to report in the Leslie Circuit

Court, as well as in the Bell Circuit Court. The order does not purport to make the appointment authorized by statute. It seems to the Court that the order cannot rise higher than its clear verbiage. Cf. Baker v. Tedders, 244 Ky. 736, 52 S.W.2d 715.

"It seems to the Court that Judge Dixon attempted to appoint Miss Valentine to an office that was nonexistent and it is ineffective as between these parties, although the Court is satisfied that in reporting in the Leslie Circuit Court she was a de facto officer insofar as the public was concerned.

"Coming now to the situation of Miss Wagers: It will be remembered that she applied to the now Judge of the 41st Judicial District of Kentucky for appointment of Official Court Reporter for the 41st Judicial District of Kentucky. A copy of the letter filed with her evidence reveals that she asked for that office. But it is to be observed that when she was appointed in the Bell Circuit Court on January 14, 1952, she was appointed Official Reporter for a term of four years from date, without specification or limitation as to whether she would serve in one or both counties.

"Orders of the Court, like any other written documents, should be construed according to what they say. She was appointed Official Court Reporter by the Judge of the 41st Judicial District for a period of four years. I fail to see any ambiguity or uncertainty in the order. Preliminary to the order of appointment, she had applied for the position of Official Court Reporter for the 41st Judicial District and the order appointing her says she is appointed Official Court Reporter for a term of four years.

"However, Miss Wagers, since her appointment, has not done any of the reporting in the Leslie Circuit Court. When the Judge told her he had another girl for the Leslie Circuit Court, she accepted the statement and made no protest. Have her conduct and actions been such as to constitute an abandonment of the office after her valid appointment? This question has troubled the Court considerably.

"She went about eighteen months without doing any of her work in Leslie. Should she now be estopped from asserting her rights to report in both counties after this long delay?

"It seems pretty well established that a person can abandon an office. Horn v. Wells, 253 Ky. 494, 69 S.W.2d 1011; 46 C.J. 980, 981; 67 C.J.S., Officers, § 56. But it seems that in order to constitute an abandonment of an office it must be total and the conduct such as to clearly show a complete relinquishment.

"Abandonment is not one of the regular and recognized ways of vacating an office and it is the view of this court that the courts should be slow to decree an abandonment unless there is fairly conclusive evidence of the intent to abandon, or the inference is inescapable that there was an abandonment. The early case of Page, Auditor, v. Hardin, 8 B. Mon. 648, 47 Ky. 648, lays down some principles which tend to define what constitutes an abandonment of office. On page 667 it is said:

"'* * * A partial neglect to perform certain duties of an office, may amount to misbehavior, and as such, be cause of forfeiture. But no partial neglect or non-user can, in itself, be sufficient evidence of abandonment— which implies a mental renunciation of the office. And if abandonment may be inferred conclusively from non-user or neglect of duties, so as to amount, in itself, to an absolute vacation without express renunciation of the office once lawfully held by the party, it can only be when the non-user or neglect is not only total or complete, but of such continuance, or under circumstances so clearly indicating absolute relinquishment, as to preclude all future questions of the facts.'

"The Court has come to the conclusion that Miss Wagers was legally ap-

pointed Official Court Reporter for the 41st Judicial District of Kentucky for the period of four years from the date of appointment. The non-user of her office was not total or complete. She has been 'hanging on' to some extent at all times. The appointment of Miss Wagers appears to be valid. She has acted, in part at least, and received a salary from the Bell Fiscal Court for her work. Since she was legally appointed, the Judge was without authority to discharge her in the manner he undertook to do, and of course was without authority to replace her in her position. It is elementary that no appointment can be made to an office in possession of one whose term has not expired.

"Since the Court has arrived at the conclusion it has, which in effect is that Miss Wagers is a *de jure* officer filling a *de jure* office, it does not seem necessary to lengthen this opinion by discussing the contentions made by counsel for Miss Stacy. It was argued by counsel for Miss Stacy that both Miss Valentine and Miss Wagers were mere *de facto* officers and that Miss Stacy was the only *de jure* officer and that they must step aside in favor of Miss Stacy. The Court is unable to go along with this line of reasoning insofar as Miss Wagers is concerned.

"It would seem advisable that a reporter should hold office only at the pleasure of the Judge. But the law is not like that. For cause, a reporter can be removed by the Judge before her term expires. But we don't have that kind of a case here. Courts must accept the law as it exists.

"Judgment will go in this case holding that Miss Wagers is the Official Court Reporter for the 41st Judicial District and both Miss Valentine and Miss Stacy will be enjoined from setting up any claim to the office, and from acting or serving as Court Reporter in either Bell or Leslie Counties."

Judgment affirmed.